## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Einar J. Otterness,                             Case No. 17-cv-4767 (NEB/TNL)

             Plaintiff,

v.                                              **REPORT &**
                                                **RECOMMENDATION**
Andersen Windows Corporation,

The Hartford,

Old Republic Insurance Company,
*administered by Gallagher Bassett*
*Services, Inc.*, and

Menk & Menk Law Firm,

             Defendants.

---

Einar J. Otterness, 3452 Judd Trail, Stillwater, MN 55082 (pro se Plaintiff); and

David M. Wilk, Larson King, LLP, 30 East Seventh Street, Suite 2800, St. Paul, MN 55101-4922 (for Defendant Andersen Windows Corporation).

---

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Andersen Windows Corporation's ("Andersen")[1] "Motion for Summary Judgment" (ECF No. 74), and pro se Plaintiff Einar J. Otterness's "Motion for Oreder [sic] and Summon(s) of Person(s) as Witnesses to Appear for Jury Trial" (ECF No. 107),

---

[1] Andersen maintains that it has been incorrectly identified in this action and Andersen Corporation is the proper defendant. (Answer at 1, ECF No. 7; Def.'s Mot. for Summ. J. at 1, ECF No. 74; Def.'s Mem. in Supp. at 1 n.1, ECF No. 76.)

"Motion for Order of Dismissal of Defendant's ('Andersen's') Summary Judgment be Granted" (ECF No. 109), oral motion for expedited trial, "Motion for Hearing and Order for Correction and Summons for Person(s) to Appear for Jury Trial and Final Settlement Conference Scheduled Before Jury Trial to be Scheduled on Calendar be Granted" (ECF No. 112), and "Motion for Order of Summons to Appear for Jury Trial of Person(s) as Witness be Granted" (ECF No. 113). All motions in this matter have been referred to the undersigned. (ECF No. 73.)

A hearing was held on April 10, 2019. (ECF No. 111.) Plaintiff appeared pro se and attorney David M. Wilk appeared on behalf of Andersen.[2] At the hearing, Plaintiff orally moved for an expedited trial.

For the reasons stated below, the Court recommends that Andersen's "Motion for Summary Judgment" be **GRANTED**; Plaintiff's "Motion for Order of Dismissal of Defendant's ('Andersen's') Summary Judgment be Granted" be **DENIED**; and this matter be **DISMISSED WITH PREJUDICE**. The Court further recommends that Plaintiff's remaining motions be **DENIED AS MOOT**.

## II. BACKGROUND

"Andersen manufactures windows and doors for the residential and light commercial markets." (Decl. of Linda Larson ¶ 2, ECF No. 102.) "Andersen's flagship facility is located in Bayport, Minnesota, and includes a Door Plant and a Window Plant." (Larson Decl. ¶ 2.) Plaintiff was employed by Andersen from at least 1999 until his

---

[2] All other parties were previously dismissed from this matter. (*See generally* Report & Recommend., ECF No. 44; Order, ECF No. 54.)

termination in 2016.[3]  (Decl. of Debra Johnson ¶¶ 3, 8, ECF No. 92; Decl. of Renee Bartley ¶ 18, ECF No. 77; *see* Compl. at 10, ECF No. 1.)  As best as this Court is able to tell, Plaintiff brings this action for claims arising out of workplace injuries in 2012 and his subsequent termination.

### A. 2012 Work Injuries

In 2012, Plaintiff suffered two injuries to his back at Andersen: one in January and one in November.  (2018 Dep. of Einar J. Otterness 21:7-12, Ex. 19 to Wilk Decl., ECF No. 93-1; Bartley Decl. ¶ 3; *see* Compl. at 5-8, 10.)  At the time of his injuries, Plaintiff was working in the mull department, which "is responsible for combining single window units into large window components."  (Def.'s Mem. in Supp. at 3; *see* 2013 Otterness Dep. 40:24-41:14, 42:16-43:11, 61:5-63:23.)  "As a mull technician, [P]laintiff regularly engaged in heavy lifting and twisting . . . ."  (Def.'s Mem. in Supp. at 3.)

Following his first injury in January, Plaintiff returned to work, performed light duty work for a time, and ultimately resumed his regular duties.  (Bartley Decl. ¶ 3.)  Plaintiff injured his back again in November.  (Bartley Decl. ¶ 3; 2018 Otterness Dep. 21:10-12; *see* 2013 Otterness Dep. 61:19-25, 63:19-22.)  Plaintiff returned to work in December and was given light duty work.  (Bartley Decl. ¶ 3.)

---

[3] Plaintiff is a veteran of the United States Navy, and the Court thanks Plaintiff respectfully for his military service. (2013 Dep. of Einar J. Otterness 8:17-23, ECF No. 24.)  As noted by Andersen's counsel, Plaintiff had previously filed this complete version of the transcript of a deposition taken in connection with his workers' compensation action.  (Decl. of David M. Wilk ¶ 3, ECF No. 93.)  *See infra* Sections II.C, III.A.  Several documents in this case have been sealed by the Court or filed under seal by Andersen because they contain confidential medical, health, and financial information.  Some of the information contained in these sealed documents—for example, restrictions placed on Plaintiff—is directly at issue in this case and has in fact been discussed by the parties in other unsealed filings.  At times, the Court cites to and discusses information contained in sealed documents, but remains mindful of the overall sensitive nature of personal medical and health information.

**B.   Temporary Lead Position**

In April 2013, Plaintiff was given a temporary lead position.  (2018 Otterness Dep. 21:13-19; Johnson Decl. ¶ 4; Ex. 15 to Johnson Decl., ECF No. 92-1.)  In this position, Plaintiff was "to lead a team in Andersen's Door Assembly area."  (Johnson Decl. ¶ 4; *see* Ex. 15 to Johnson Decl.)  The position was for approximately six months and "was less physically demanding than [Plaintiff's] job in the mull department."  (Johnson Decl. ¶ 4; *see* Ex. 15 to Johnson Decl.)  The position ended in November and Plaintiff returned to the mull department.  (Johnson Decl. ¶ 4; *see* 2018 Otterness Dep. 22:20-24.)

**C.   Workers' Compensation Proceedings & IMEs**

In or around 2013 and 2014 (and perhaps continuing thereafter), Plaintiff was involved in workers' compensation proceedings for rehabilitation services related to the 2012 injuries.  (*See generally* Rehabilitation Request, ECF No. 33; Workers' Compensation Decision & Order, ECF No. 28-3; 2013 Otterness Dep.; Compl. at 8.)  As part of these proceedings, an independent medical evaluation was performed in July 2013 by Jeffrey C. Dick, M.D.  (*See* Workers' Compensation Decision & Order at 1-4; *see generally* July 2013 Dick IME, ECF No. 33.)  Dr. Dick "recommend[ed] a permanent lifting limit of 75 pounds."  (July 2013 Dick IME at 9; *see* Compl. at 4-5.)  In April 2014, a workers' compensation mediator/arbitrator denied Andersen's request to terminate rehabilitation services.  (*See generally* Workers' Compensation Decision & Order.)

In May 2014, Dr. Dick conducted a follow-up independent medical evaluation.  (*See generally* May 2014 Dick IME, ECF No. 33.)  Dr. Dick observed that Plaintiff "is never going to be able to return to heavy physical work," and "[i]t would be reasonable for him

4

to continue to observe an occasional 50-pound . . . lifting limit." (May 2014 Dick IME at 11; *see* Compl. at 5.)

### D. Short-Term Disability

At the end of February 2014, Plaintiff told Andersen that he could no longer work in the mull department because of his back injuries. (2018 Otterness Dep. 62:23-25; *see* Bartley Decl. ¶ 4.) Plaintiff's physician subsequently restricted him from working through the end of March. (Ex. 1 to Bartley Decl., ECF No. 78; *see* Bartley Decl. ¶ 4.) Plaintiff applied for and received six months of disability benefits under Andersen's short-term disability plan, ending in August. (Bartley Decl. ¶¶ 5-6; *see* Ex. 2 to Bartley Decl., ECF No. 77-1.)

### E. Long-Term Disability & Andersen's Return to Work Practice

#### 1. Long-Term Disability

At the end of his short-term disability period, Plaintiff applied for and received disability benefits under Andersen's long-term disability plan. (Bartley Decl. ¶¶ 7-8; *see* Ex. 3 to Bartley Decl., ECF No. 80.) Under Andersen's long-term disability plan, Plaintiff received benefits "for up to two years if he remained unable to perform his job at Andersen." (Bartley Decl. ¶ 7.) After two years, Plaintiff would "continue to receive benefits if he was unable to perform any job." (Bartley Decl. ¶ 7.) Plaintiff received benefits for two years, ending August 31, 2016, under Andersen's long-term disability plan. (Bartley Decl. ¶ 17; *see* Ex. 13 to Bartley Decl., ECF No. 77-1.)

### 2. Andersen's Return to Work Practice

Andersen's disability program includes a "Return to Work Practice" ("RWP"). (Bartley Decl. ¶ 9; *see generally* RWP, Ex. 7 to Bartley Decl., ECF No. 77-1.) The RWP provides placement assistance for employees with permanent work restrictions for six months. (Bartley Decl. ¶ 10; RWP at AC (Otterness) 00488-90.[4]) During these six months, Andersen "actively assisted [the employee's] effort to find work within his [or her] restrictions." (Bartley Decl. ¶ 10; *see* RWP at AC (Otterness) 00489.) After the six-month period, the employee "would continue to have access to internally posted positions at Andersen and could continue to apply for open positions as an internal candidate, but . . . would be responsible for finding such open positions." (Bartley Decl. ¶ 10; *see* RWP at AC (Otterness) 00490.)

In August 2014, around the time his short-term disability benefits were ending and his long-term disability benefits beginning, Plaintiff was notified of Andersen's RWP. (Bartley Decl. ¶ 9; *see* Ex. 4 to Bartley Decl., ECF No. 77.) Andersen gathered information regarding Plaintiff's functional abilities, including the results of a functional capacity evaluation conducted in July 2014. (*See* Bartley Decl. ¶ 11; Exs. 8, 9, 10 to Bartley Decl., ECF Nos. 82, 84, 86.) Plaintiff's restrictions included, but were not limited to (1) frequently lifting or carrying between 5 and 20 pounds; (2) occasionally lifting or carrying between 10 and 30 pounds; (3) seldomly lifting or carrying between 20 and 35 pounds; and

---

[4] Because the RWP policy document is not paginated, the Court uses the Bates numbers of the pages.

(4) seldomly bending/stooping, crawling, and crouching.  (Exs. 9 at AC (Otterness) 00336, 10 at AC (Otterness) 00359.[5])

Andersen first considered whether Plaintiff could be placed in an area referred to as "screw pack," where employees are "responsible for packaging hardware (primarily screws), such as the hardware included with Andersen windows and doors."  (Bartley Decl. ¶ 13; *see* Ex. 11 to Bartley Decl. at AC (Otterness) 00287-88, ECF No. 88.[6])  "Work in the screw pack area is not physically demanding, and [Andersen] had success in the past in placing employees there even when they had significant physical restrictions."  (Bartley Decl. ¶ 13.)  There were, however, no openings available.  (Bartley Decl. ¶ 13; *see* Ex. 11 to Bartley Decl. at AC (Otterness) 00288.)

Over the next six months, Andersen continued to look for positions that Plaintiff could perform.  (Bartley Decl. ¶ 14; *see* Ex. 11 to Bartley Decl. at AC (Otterness) 00289-91.)  Unfortunately, "[t]he open positions  . . . [at Andersen] either required significant management experience and/or a college degree (neither of which [Plaintiff] had) or had lifting, bending, twisting requirements that were beyond [Plaintiff's] medical restrictions." (Bartley Decl. ¶ 14; *see* Ex. 11 to Bartley Decl. at AC (Otterness) 00289-91.)  The positions of supply chain analyst, "AR" specialist, credit manager, maintenance technician, engineer, supply chain supervisor, supply chain specialist, site occupational health and safety coordinator, learning and performance specialist, senior business analyst and purchasing coordinator, supply chain coordinator, site safety specialist, and payroll practitioner all

---

[5] *See supra* n.4.
[6] *See supra* n.4.

required education, certifications, and/or experience that Plaintiff did not have.  (Ex. 11 to Bartley Decl. at AC (Otterness) 00290-91).  A custodian position "require[d] extensive physical activity and lifting up to 50[ pounds]."  (Ex. 11 to Bartley Decl. at AC (Otterness) 00291.)  A position in the "supermarket" area "require[d] bending/stooping and heavy lifting."  (Ex. 11 to Bartley Decl. at AC (Otterness) 00291.)

After the six-month period, Andersen continued to periodically look for positions that Plaintiff could perform.  (Bartley Decl. ¶ 15.)  When Andersen learned that Plaintiff had obtained his commercial driver's license, Andersen considered whether there were any open truck driver positions for Plaintiff.  (Bartley Decl. ¶ 16.)  Andersen's truck driver positions, however, "required five years of distribution experience as well as the ability to lift up to 50 pounds, perform tasks requiring repetitive motion and stand for long periods."  (Bartley Decl. ¶ 16 (quotation omitted); *see* Ex. 12 to Bartley Decl., ECF No. 77-1.)  Ultimately, at the end of Plaintiff's long-term disability period, Andersen had no positions available that Plaintiff could perform.  (Bartley Decl. ¶¶ 15-16; *see* Ex. 14 to Bartley Decl., ECF No. 90.)

### F.  60-Day Leave & Termination

At the end of his long-term disability period, Plaintiff was placed on unpaid leave for 60 days to allow him to return to work in his position or another available position within Andersen.  (Bartley Decl. ¶ 18; *see* Ex. 14 to Bartley Decl.)  During these 60 days, Andersen also looked to whether there were positions available or that "might become available in the near future" that Plaintiff could perform "within his restrictions with or without reasonable accommodation."  (Bartley Decl. ¶ 18.)  And again, unfortunately, there

8

were none.  (Bartley Decl. ¶ 18; Johnson Decl. ¶ 8.)  As Plaintiff was no longer eligible for long-term disability benefits and had exhausted his 60-day leave and there were no positions available for him at Andersen, Plaintiff's employment was terminated on November 1, 2016.  (Bartley Decl. ¶ 18; Johnson Decl. ¶ 8; Ex. 18 to Johnson Decl., ECF No. 92-1.)

### G. EEOC Charges

Plaintiff filed two different charges with the Minnesota Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC") alleging Andersen discriminated against him on the basis of disability: one in 2014 and one in 2016.  (2014 Charge, Ex. 24 to Wilk Decl., ECF No. 93-1; 2016 Charge, Ex. 26 to Wilk Decl., ECF No. 93-1; *see* 2018 Otterness Dep. 53:4-6.)

#### 1. 2014 Charge

On May 20, 2014, Plaintiff filed a charge of discrimination alleging that Anderson did not reasonably accommodate him "in the form of job transfer or placement," and he had been retaliated against as a result of requesting accommodation.  (2014 Charge.)  On January 20, 2015, the EEOC dismissed Plaintiff's charge and notified him of his right to file a lawsuit within 90 days.  (Ex. 25 to Wilk to Decl., ECF No. 93-1; *see* 2018 Otterness Dep. 53:10-18.)  Plaintiff did not file suit within the timeframe.  (2018 Otterness Dep. 53:20-54:4.)

#### 2. 2016 Charge

Plaintiff's second charge was filed on December 7, 2016.  (2016 Charge.)  Plaintiff alleged that Andersen denied his request for reasonable accommodation and retaliated

against him based on his prior charge and continued requests for reasonable accommodation. (2016 Charge.) Plaintiff further alleged that he continued to request and was denied reasonable accommodation up until his termination. (2016 Charge.) The EEOC dismissed Plaintiff's second charge on July 26, 2017, and again notified him of his right to sue. (Ex. to Compl., ECF No. 2; *see* Compl. at 2.)

### H. This Lawsuit

Plaintiff filed the instant action on October 23, 2017. (*See generally* Compl.) As best as this Court is able to tell, Plaintiff alleges that Andersen discriminated against him on the basis of disability by having him work in the mull department in excess of his restrictions and ultimately terminated his employment. Plaintiff alleges violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and Equal Pay Act of 1963[7], 29 U.S.C. § 206(d).

### III. ANDERSEN'S MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Andersen has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must

---

[7] "The [Equal Pay Act] was enacted in 1963 as an amendment to the Fair Labor Standards Act . . . , 29 U.S.C. §§ 201 et seq." *Renstrom v. Nash Finch Co.*, 787 F. Supp. 2d 961, 964 (D. Minn. 2011) (citing Pub. L. 88–38, 77 Stat. 56 (1963)).

identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A); *Pena v. Kindler*, 187 F. Supp. 3d 1070, 1076 (D. Minn. 2016) ("A party asserting that a genuine dispute exists—or cannot exist—about a material fact must cite particular parts of materials in the record." (quotation omitted)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Pena*, 187 F. Supp. 3d at 1076 (citing *Anderson*, 477 U.S. at 252).  "On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 255).

"To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue for trial." *Davenport v. Univ. of Ark. Bd. of Trustees*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49); *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) ("The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986))).  "[T]here is no genuine issue for trial if 'the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving party.'" *Ball v. City of Lincoln*, 870 F.3d 722, 727 (8th Cir. 2017) (quoting *Torgerson*, 643 F.3d at 1042).

The Court recognizes that Plaintiff is proceeding pro se. While pro se plaintiffs are entitled to have their pleadings liberally construed, "Rule 56 remains applicable." *Sisney v. Kaemingk*, 886 F.3d 692, 697 (8th Cir. 2018) (quotation omitted); *see Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."). And, "in granting the deference owed to *pro se* parties, [the court may not] assume the role of advocate for the pro se litigant." *Machen v. Iverson*, No. 11-cv-1557 (DWF/JSM), 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012) (quotation omitted), *report and recommendation adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012); *see Bracken v. Dormire*, 247 F.3d 699, 705 (8th Cir. 2001) (Arnold, J., dissenting) ("Of course, a *pro se* pleading is not a magic hat out of which a court may pull any claim it thinks should have been advanced.").

In a prior Report and Recommendation, this Court observed that "Plaintiff filed voluminous documents and other evidence purportedly supporting his claims" at the end of February and again in early March 2019. (Report & Recommend. at 6; *see generally* ECF Nos. 24-37, 40.)

> The February documents consist of more than 400 pages, which, by way of example, include: a deposition transcript from and documents related to the workers-compensation

> proceeding (ECF Nos. 24, 37-6; *see* ECF No. 25 at 1);
> documents related to Plaintiff's employment history and other
> experience (ECF Nos. 25, 25-1 through 25-7); documents
> related to prior legal representation (ECF No. 26; *see* ECF No.
> 25 at 1); copies of statutes and legal treatises (ECF Nos. 27,
> 27-1 through 27-6); medical records (ECF Nos. 28, 29, 30, 32,
> 33); and various employment reports, records, and documents
> specific to Andersen Windows (ECF Nos. 31, 31-1, 34, 34-1
> through 34-5, 35, 35-1 through 35-3, 36, 36-1, 37, 37-1 through
> 37-5). The March DVD contains additional documents,
> several audio recordings, and what appears to be over 100 text
> messages exchanged with a number of attorneys, including the
> [Menk & Menk] Law Firm. (ECF No. 40; *see* Pl.'s Opp'n at
> 1[, ECF No. 39].)

(Report & Recommend. at 6.) In response to Andersen's motion for summary judgment,

Plaintiff appears to be invoking all of these prior filings, in total and *en masse*. (*See* Pl.'s

Rebuttal at 1, 4-5, ECF No. 106; Pl.'s Mot. for Order of Dismissal at 1, 4-5, ECF No. 109.)

"Like any other civil litigant, [Plaintiff i]s required to respond to [Andersen's]

motion[] with specific factual support for his claims to avoid summary judgment." *Beck*

*v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001); *see* Fed. R. Civ. P. 56(c). "A district court is

not required to speculate on which portion of the record the nonmoving party relies, nor is

it obligated to wade through and search the entire record for some specific facts that might

support the nonmoving party's claim." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260

(8th Cir. 1996) (quotation omitted); *accord Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753,

758-59 (8th Cir. 2015) ("A district court is not required to mine the 'summary judgment

record searching for nuggets of factual disputes to gild a party's arguments.'" (quoting

*Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006)); *Satcher v. Univ. of*

*Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("It was not the

District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact."). On a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## B. Equal Pay Act

The Equal Pay Act provides that

> [n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

29 U.S.C. § 206(d)(1). Stated differently, the Equal Pay Act prohibits an "employer [from] discriminat[ing] on the basis of sex by paying different wages to men and women performing equal work under similar conditions." *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 833 (8th Cir. 2008). "To establish a claim of sex-based wage discrimination under the Equal Pay Act . . . , 'a plaintiff must show by a preponderance of the evidence that (1) []he was paid less than a [fe]male employed in the same establishment, (2) for equal work on jobs requiring equal skill, effort, and responsibility, (3) which were performed under similar working conditions.'" *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 421-22 (8th Cir. 2017) (footnote omitted) (quoting *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002)). Equal Pay Act claims are generally subject to a two-year statute of limitations, which can be extended to three years if the employee can show a willful violation. 29 U.S.C. § 255(a); *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 579-80 (8th Cir. 2006) ("[I]f an employee can show that the employer willfully violated the Equal Pay Act,

14

the statute of limitations is three years, rather than the presumptive two-year statute of limitations, which could lengthen the time period for which damages can be awarded.").

The basis for Plaintiff's claim under the Equal Pay Act is not clear from the Complaint. Plaintiff only identified the statute. (*See* Compl. at 2.) During his deposition, Plaintiff explained that his Equal Pay Act claim was based on Andersen's placement of a woman rather than Plaintiff (a man) in the lead role after his temporary position concluded. (*See* 2018 Otterness Dep. 16:14-17:25.) According to Plaintiff, Andersen was not going to fill the lead role, yet later placed this female employee in the lead role full time rather than Plaintiff. (2018 Otterness Dep. 16:24-17:7.) These events all took place in 2013. (2018 Otterness Dep. 17:22-25.)

Plaintiff's Equal Pay Act claim is barred by the statute of limitations. Even assuming that Plaintiff could show that Andersen willfully violated the Equal Pay Act, any such claim would need to have been brought within three years, i.e., by 2016. Plaintiff did not commence this action until 2017. Therefore, the Court recommends that Andersen's motion for summary judgment be granted on Plaintiff's Equal Pay Act claim.

### C. Rehabilitation Act

"The Rehabilitation Act is similar to the ADA. Congress enacted the Rehabilitation Act as a comprehensive federal program to ensure that individuals with disabilities would not be denied the benefits of or be subjected to discrimination under any program or activity receiving federal funding." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir. 2013) (quotations and citations omitted); *see* 29 U.S.C. § 794(a). To succeed on his Rehabilitation Act claim, Plaintiff must "'must demonstrate that: (1) he is a qualified

individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds, and (3) he was discriminated against based on his disability.'" *Turner v. Mull*, 784 F.3d 485, 494 (8th Cir. 2015) (quoting *Gorman v. Bartch,* 152 F.3d 907, 911 (8th Cir. 1998)).

Through the declaration of its Director of Real Estate & Administrative Facilities, Andersen has submitted evidence that it does not receive federal funding.  (Larson Decl. ¶ 3.)  Plaintiff has not challenged Andersen's evidence or submitted evidence of his own regarding any receipt of federal funding.  The undisputed evidence shows that Andersen receives no federal funding.  Because "the Rehabilitation Act, unlike the ADA, applies only to recipients of federal funding," and Andersen does not receive federal funding, Plaintiff cannot prevail on his Rehabilitation Act claim as a matter of law.  *AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1138 (D. Minn. 2008); *see also Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) ("The [Rehabilitation Act] contains the additional requirement that the plaintiff show the program or activity from which he is excluded receives federal financial assistance.").  Therefore, the Court recommends that Andersen's motion for summary judgment be granted on Plaintiff's Rehabilitation Act claim.  *See O'Connor v. Metro Ride, Inc.*, 87 F. Supp. 2d 894, 898 (D. Minn. 2000) ("Metro Ride cannot be subjected to Rehab[ilitation] Act liability when it received no Federal financial assistance."); *see also, e.g.*, *Moore v. Computer Scis. Corps.*, No. 5:15-cv-00683-MHH, 2017 WL 3873777, at *6, 14 (N.D. Ala. Sept. 5, 2017); *Gazouski v. City of Belvidere*, No. 93 C 20157, 1994 WL 585735, at *2 (N.D. Ill. Oct. 21, 1994).

16

### D. ADA

The primary thrust of Plaintiff's lawsuit is that Andersen discriminated against him in violation of the ADA.  Plaintiff alleges that Andersen returned him to the mull department after the temporary lead position ended, and the physical demands of the mull department exceeded the restrictions identified by Dr. Dick and the subsequent functional capacity evaluation.  As best as this Court is able to tell and according Plaintiff's Complaint the most generous of readings, *see Stone*, 364 F.3d at 915, Plaintiff claims that Andersen discriminated against him in violation of the ADA by failing to accommodate him and ultimately terminating him.

### 1.  Relevant Acts

Plaintiff's allegations roughly span a period of four years, from his first injury in January 2012 to his termination in November 2016.  "The ADA requires a plaintiff to file a complaint with the EEOC before filing a suit in federal court."  *Voss v. Hous. Auth. of the City of Magnolia*, 917 F.3d 618, 623 (8th Cir. 2019); *see also, e.g.*, *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 919 (8th Cir. 2018).  The charge of discrimination must be brought "within 300 days of the alleged discriminatory act."  *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 520 (8th Cir. 2011); *see* 42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . , except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto . . . , such charge

17

shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . ."); *Moses*, 864 F.3d at 919 (42 U.S.C. § 2000e-5 applies to ADA pursuant to 42 U.S.C. § 12117(a)).[8]  Accordingly, only those acts occurring 300 days before each charge was filed are actionable in connection with that particular charge. *Morgan*, 536 U.S. at 114.  Thus, Plaintiff's first charge—filed May 20, 2014—covers alleged discriminatory acts occuring roughly in or after July 2013, and Plaintiff's second charge—filed December 7, 2016—covers alleged discriminatory acts occurring roughly in or after February 2016.

As stated above, the EEOC dismissed Plaintiff's first charge and notified him of his right to sue in January 2015.  "An employee who receives a right to sue letter from the EEOC has 90 days in which to file suit." *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000) (citing 42 U.S.C. § 2000e-5(f)(1)).  It is undisputed that Plaintiff did not file suit within 90 days after his first charge was dismissed.  Because Plaintiff did not file suit within 90 days, he is barred from asserting any claims of disability discrimination based on the first charge. *Id.*  This is true even though Plaintiff subsequently filed a second charge referencing the same alleged failure to accommodate. *Frazier v. Vilsack*, 419 F. App'x 686, 689-90 (8th Cir. 2011) (per curiam); *Spears*, 210 F.3d at 853.

As such, this lawsuit only concerns alleged discriminatory acts that occurred roughly in or after February 2016, the 300-day window preceding the filing of Plaintiff's

---

[8] Both of Plaintiff's charges were first filed with the Minnesota Department of Human Rights.  (Exs. 24, 26 to Wilk Decl.)  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Because Morgan first filed his charge with an appropriate state agency, only those acts that occurred 300 days before February 27, 1995, the day that Morgan filed his charge, are actionable.").

second charge in December 2016.  While the Court appreciates Plaintiff's position that the focus should be what happened at the end of 2013, any claims based on Andersen's alleged failure to accommodate Plaintiff's restrictions in 2013 (or 2014 or 2015, for that matter) are not actionable.  Consequently, the Court focuses on events taking place in the 300-day window preceding the filing of Plaintiff's second charge, namely, Plaintiff's termination in November 2016.

### 2.  Discrimination

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Plaintiff's termination and accommodation claims under the ADA require him to make out a prima facie case of disability discrimination.  *See Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370-71 (8th Cir. 2018); *Moses*, 894 F.3d at 923; *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015).

"To establish a prima facie case of disability discrimination, a plaintiff must show that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action as a result of the disability."  *Denson*, 910 F.3d at 370 (quotation omitted).  Andersen asserts that Plaintiff cannot establish a prima facie case of disability discrimination because he is not a qualified individual, and therefore summary judgment is appropriate.  *See Walz*, 779 F.3d at 844-45; *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 901 (8th Cir. 2009).

19

"Whether an individual is qualified within the meaning of the ADA is determined by applying a two-part test." *Walz*, 779 F.3d at 845. "[A]n employee must (1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003) (quotation omitted); *accord Denson*, 910 F.3d at 370-71. Andersen has presented evidence that Plaintiff was terminated because he was no longer eligible for leave and there were no open positions that Plaintiff was qualified for and could perform with or without accommodation. Andersen used Plaintiff's functional capacity evaluation to determine whether there were jobs available that he was qualified to perform within those restrictions. Andersen first considered placement in the "screw pack" area based on prior success in placing individuals with restrictions in this area, but there were no positions available. Andersen then considered Plaintiff for more than ten other open positions, but these positions required additional education and experience that Plaintiff did not have (such as a four-year degree) or exceeded his restrictions (such as lifting up to 50 pounds, bending, or stooping).

Plaintiff has presented no evidence that he was qualified to perform the essential functions of any of the open positions at Andersen. In the Complaint, Plaintiff stated that he was qualified for a truck driver position with Andersen. (Compl. at 9.) Evidence in the record shows, however, that Andersen's truck driver positions required among other things, the ability to lift up to 50 pounds—well above Plaintiff's lifting restrictions. Plaintiff has neither refuted this evidence nor otherwise presented evidence to raise a genuine dispute

regarding this element of his claim.  Moreover, Plaintiff does not dispute that he did not have the required education, certification, and/or experience for certain positions and that others were outside his restrictions.  While the record reflects that, at times, Plaintiff personally believed that he could perform work exceeding his restrictions, "the ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden and . . . an employee's subjective belief that he or she can perform the essential functions of the job is irrelevant."  *Denson*, 910 F.3d at 371 (quotation omitted); *accord Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003).  Plaintiff also has not made any showing, let alone a facial one, that reasonable accommodation was possible.  *See Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1182 (8th Cir. 2019); *Fenney*, 327 F.3d at 712.

"When there are no vacant positions for which an individual with a disability qualifies, the ADA does not require an employer to retain the individual and create an entirely new position for him."  *McPherson v. O'Reilly Auto., Inc.*, 491 F.3d 726, 731 (8th Cir. 2007); *see Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 546 (8th Cir. 2018) ("[A]n employee invoking ADA protection must show she can perform her essential job functions *at the time of* her termination.  An employer need not eliminate the essential functions of a job to accommodate a disabled employee." (quotation and citation omitted)).  Because Plaintiff has not raised a genuine dispute that there were positions available at Andersen for which he was qualified with or without reasonable accommodation, Plaintiff has failed to make a prima facie case of disability discrimination.  *Denson*, 910 F.3d at 371.  And because Plaintiff has failed to make a prima facie case of disability discrimination,

Andersen is entitled to summary judgment on Plaintiff's termination and accommodation claims. *See, e.g.*, *Blevins v. AT&T Servs., Inc.*, 744 F. App'x 972, 973 (8th Cir. 2018) (per curiam); *Denson*, 910 F.3d at 371; *Walz*, 779 F.3d at 845-47; *McPherson*, 491 F.3d at 731; *see also Lipp*, 911 F.3d at 544-46; *Moses*, 894 F.3d at 923-24.

### 3. Retaliation

The ADA also prohibits an employer from retaliating against an employee who files a charge of discrimination. 42 U.S.C. § 12203(a); *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999). "A prima facie case of retaliation requires the plaintiff to show (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the two." *Moses*, 894 F.3d at 924 (quotation omitted). The only adverse employment action apparent to the Court that occurred within 300 days of Plaintiff's second EEOC charge was his termination in November 2016.

"A retaliation claim under the ADA requires a but-for causal connection between the employee's assertion of h[is] ADA rights and an adverse action by the employer." *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016). "Once the plaintiff establishes a prima facie case, the employer has the burden to produce a non-retaliatory reason for the discharge." *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 412 (8th Cir. 2018). "Finally, if the employer shows such a reason, the burden of production shifts again to the plaintiff, who must then present evidence that the proffered reason for termination was pretext." *Id.*

Andersen first asserts that Plaintiff cannot make out a prima facie case of retaliation based on the amount of time that passed between his first EEOC charge in 2014 and his termination in 2016. "An employee can establish a causal link between h[is] protected activity and the adverse employment action through the timing of the two events." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006) (quotation omitted). Nevertheless, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999); *see also, e.g.*, *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 973 (8th Cir. 2014); *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014); *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012). "Temporal proximity between the protected conduct and adverse action must be very close for timing alone to be sufficient." *Lors*, 746 F.3d at 865 (quotation omitted); *accord Sisk*, 669 F.3d at 900; *Hite*, 446 F.3d at 866. Recognizing that "there is no definitive line drawn to show at what point a temporal connection establishes causation," the Eighth Circuit Court of Appeals has emphasized that a span of "two *months* is too long to support a finding of causation without something more." *Prod. Fabricators*, 763 F.3d at 973 (quotation omitted) (emphasis added); *see also Lors*, 746 F.3d at 866.

In this case, more than two *years* passed between Plaintiff's first EEOC charge alleging that Anderson discriminated against him on the basis of disability and his termination. Plaintiff has not identified any other evidence showing or suggesting that Andersen terminated his employment based on his first EEOC charge. Without more, the period of time between Plaintiff's protected activity and Andersen's adverse employment

action is too great to present a genuine issue of material fact as to the existence of a causal connection. *See, e.g.*, *Prod. Fabricators*, 763 F.3d at 973 (one year); *Sisk*, 696 F.3d at 901 (two months); *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001) (seven months); *see also Lors*, 746 F.3d at 865 (two years). Indeed, the time between Plaintiff's protected activity and Andersen's adverse employment action is *twice as long* as the one-year period rejected by the Eighth Circuit in *Product Fabricators*. 763 F.3d at 973 ("Given that Breauz engaged in the protected activity a year prior to his termination, the temporal connection here does not support a finding of causation."); *see Lors*, 746 F.3d at 865.

Moreover, even if Plaintiff could make a prima facie case of retaliation, Andersen has presented evidence that Plaintiff was terminated not out of retaliation, but because he was not qualified to perform any of the open positions at Andersen. *See McLain v. Andersen Corp.*, 567 F.3d 956, 969-70 (8th Cir. 2009); *see also Moses*, 894 F.3d at 924. Plaintiff has not pointed to evidence in the record showing that this proffered non-retaliatory reason for his termination was pretextual. *See Hustvet*, 910 F.3d at 413. As discussed in greater detail above, the evidence shows that Plaintiff was terminated after he was no longer eligible for leave and there were no open positions at Andersen for which he was qualified. In order to survive Andersen's motion for summary judgment, Plaintiff must "present evidence that the proffered reason for termination is pretext." *Prod. Fabricators*, 763 F.3d at 974. He has not done so here and, as a result, his retaliation claim fails as a matter of law. *Hustvet*, 910 F.3d at 413; *McLain*, 567 F.3d at 970; *see also Prod. Fabricators*, 763 F.3d at 974; *Lors*, 746 F.3d at 868-69.

24

Therefore, the Court likewise recommends that Andersen's motion be granted on Plaintiff's retaliation claim.

### E. Summary

In sum, for the reasons stated above, the Court recommends that Andersen's "Motion for Summary Judgment" be granted in its entirety; Plaintiff's "Motion for Order of Dismissal of Defendant's ('Andersen's') Summary Judgment be Granted" be denied; and this matter be dismissed with prejudice.

## IV. PLAINTIFF'S TRIAL-RELATED MOTIONS

Plaintiff has made a number of trial-related motions, seeking to procure certain witnesses for trial and set dates for a final settlement conference and trial: "Motion for Oreder [sic] and Summon(s) of Person(s) as Witnesses to Appear for Jury Trial," oral motion for expedited trial, "Motion for Hearing and Order for Correction and Summons for Person(s) to Appear for Jury Trial and Final Settlement Conference Scheduled Before Jury Trial to be Scheduled on Calendar be Granted," and "Motion for Order of Summons to Appear for Jury Trial of Person(s) as Witness be Granted."  Because the Court has concluded that Andersen is entitled to judgment as a matter of law and recommended that Andersen's motion for summary judgment be granted in its entirety, the Court further recommends that these remaining, trial-related motions be denied as moot.

## V. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Andersen's "Motion for Summary Judgment" (ECF No. 74) be **GRANTED**.

2. Plaintiff's "Motion for Order of Dismissal of Defendant's ('Andersen's') Summary Judgment be Granted" (ECF No. 109) be **DENIED**.

3. Plaintiff's "Motion for Oreder [sic] and Summon(s) of Person(s) as Witnesses to Appear for Jury Trial" (ECF No. 107), oral motion for expedited trial, "Motion for Hearing and Order for Correction and Summons for Person(s) to Appear for Jury Trial and Final Settlement Conference Scheduled Before Jury Trial to be Scheduled on Calendar be Granted" (ECF No. 112), and "Motion for Order of Summons to Appear for Jury Trial of Person(s) as Witness be Granted" (ECF No. 113) be **DENIED AS MOOT**.

4. This matter be **DISMISSED WITH PREJUDICE**.

Date: June___24___, 2019                     _____*s/ Tony N. Leung*_____
                                             Tony N. Leung
                                             United States Magistrate Judge
                                             District of Minnesota

                                             *Otterness v. Andersen Windows Corporation et al.*
                                             Case No. 17-cv-4767 (NEB/TNL)

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).